NEW YORK, N. H. & H. RY. CO. v. KILBY.

(Circuit Court of Appeals, First Circuit. May 12, 1916. On Petition for Rehearing, August 7, 1916.)

No. 1179.

1. CARRIERS ⬥347(7)—INJURY TO PASSENGERS—CONTRIBUTORY NEGLIGENCE.
    Since the general adoption by railroad companies of vestibule connections between passenger cars, there is no rule which makes it negligence as matter of law for a passenger to pass over or stand upon the plat-

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

forms of cars so connected; but the question of negligence is one of fact in each case.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1355, 1356, 1376, 1378, 1402; Dec. Dig. 347(7).]

2. CARRIERS 320(15)—ACTION FOR INJURY TO PASSENGER—QUESTIONS FOR JURY.

A passenger, while passing with others from one car to another, shortly after the train started, in search of seats, stopped for a short time in the vestibule connecting the cars, and, being jostled by others, placed his hand on the face plates on the connecting vestibules, where it was caught and injured when the plates opened and closed as the train entered or passed from a curve. Such plates were not equipped with roller curtains or shield guards to protect passengers from injuries, although such equipment was in common use, and was used in some of the vestibules in the same train. *Held*, that the questions of the company's negligence and the passenger's contributory negligence were both for the jury.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1318; Dec. Dig. 320(15); Negligence, Cent. Dig. § 301.]

In Error to the District Court of the United States for the District of Massachusetts; James M. Morton, Jr., Judge.

Action at law by Thomas E. Kilby against the New York, New Haven & Hartford Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

John L. Hall, of Boston, Mass. (Stuart C. Rand, of Boston, Mass., on the brief), for plaintiff in error.

Frederick W. Fosdick, of Boston, Mass. (John W. Saxe, of Boston, Mass., on the brief), for defendant in error.

Before PUTNAM and DODGE, Circuit Judges, and ALDRICH, District Judge.

ALDRICH, District Judge. [1] We look upon this case as one upon simple lines and one which should be decided in favor of the defendant in error. It is a case in which neither the question of the plaintiff's nor the defendant's care, or want of care, could have been determined under any absolute rule of law. Such questions of negligence and care under the circumstances of this case, were reasonably in the field of fact. It cannot be that any of the older cases with reference to passengers standing upon the old-style platforms have any particular pertinency in a situation like this, because, under the old platform system, the arrangements for connecting the cars were manifestly against the idea of passing over the platforms, or standing there when trains were in motion. The newer system of connection involved in this case is quite different, because the vestibule system is such as to reasonably present the question of fact whether the purpose was not to afford easy communication between the different parts of the train, and to afford reasonable protection to passengers while exercising the right of going from one passenger coach or parlor car to another, or to the dining or smoking car, according to the circumstances under which the train might be made up. We do not think any absolute rule, one way or the other, is created by the fact whether the train was a through train, or one made up altogether of parlor cars, or altogether of vesti-

bule cars. Given circumstances in that respect, one way or the other, might have some bearing upon the question of the reasonableness of care.

The train in question was bound from the South Terminal Boston Station to the Fall River wharf, and was made up of something like ten cars, including an emigrant car, a baggage car, and eight passenger cars, of which the two rear cars were parlor cars. Some or all of the passenger cars had modern vestibule connections. The parlor cars had vestibule connections equipped with what was called a "safety roller curtain" or "shield guard." Ahead of the parlor cars were the passenger cars with vestibules without the safety guards. These vestibule connections are so constructed that they open a little and close again in passing from a straight line on to and off a curve, and the supposed object of the safety guard, or curtain, is to afford protection against passengers being involved in injury in passing through the passageway from car to car.

Upon the question of a passenger's care, if a passenger was rightfully going from one part of a train to another, it would become a reasonable question for the jury whether, when a train was running on a straight track, with the vestibule connections perfect, the passenger might not, without carelessness, inadvertently be involved in injury as the train was jostled, by placing his hand on one side or the other of the vestibule connection, not knowing that the vestibule connections opened and closed.

[2] In the case at bar, as the evidence tended to show, the plaintiff, not being able to find a seat in a certain car, the seats being occupied and the aisles crowded, left his baggage and passed forward to find a seat, and stopped for a moment or so on the platform between two cars with vestibule connections, not having what is called the safety roller curtain or shield guard. As the evidence tended to show, the evening was hot, and as the train was moving out passengers were moving back and forth to find seats in order to locate themselves, and the platforms were more or less occupied or crowded, and the plaintiff stopping for the purpose of getting a breath of fresh air, and being jostled, to steady himself placed his hand against the face plates on the connecting vestibules, where it was caught and injured.

In a situation like this, we think it a question for the jury, whether the vestibule arrangement does not contemplate more or less passing over the platform and more or less stopping for comfort and convenience; and if, in passing, or while momentarily stopping, a passenger is injured, that it would be a question for the jury whether he was careless. It could not be said, we think, that the mere facts of a passenger's passing through a vestibule connection and stopping for a moment or so for air, and while thus stopping, being jostled, undertook to steady himself by placing his hand upon the plates of the vestibule connections, which he may or may not have known opened and closed under the varying conditions of the track line, constituted negligence as a matter of law.

Now, as to the question of the railroad's want of care. The evidence tended to show that, under vestibule connections, the face plates or

diaphragms of the vestibules open and close as the cars are passing from straight lines to curves, and from curves to straight lines, and for minimizing hazard that roller curtains, or shield guards, are not only accessible, but have for a considerable time been used upon railroads using cars with vestibule connections.

It seems that these guards were on the vestibules between the parlor cars on the train in question. That, perhaps, is of no particular importance, aside from the fact that it tended to show that they were in use by the railroad, and the use would be evidence upon the question of the railroad's understanding that they were vestibule appliances in the direction of safety.

We do not understand that there is any rule of law, or rule of care, which would require these curtains, or guards, on parlor cars with vestibule connections and justify their non-use on ordinary passenger cars with similar vestibule connections. It would hardly do to say that a jury would be justified in holding the railroad culpable for not having safety guards on parlor car vestibules, and that it was in the exercise of due care in not having them upon ordinary passenger cars with like vestibule connections in the same train.

As has already been pointed out, we see no view in which this case could have been ruled under principles of law, one way or the other, on either of the questions of the plaintiff's or the defendant's care. We think, in both aspects, that they were questions of fact under the circumstances, and that none of the authorities cited sustain the claim that it should have been ruled as law either that the injury resulted from the plaintiff's carelessness or that the defendant was in the exercise of due care. Under such view, the case was submitted to the jury under clear, definite and comprehensive instructions which it would be hard to improve upon.

The judgment of the District Court is affirmed, with interest, and the costs of this court.

### On Petition for Rehearing.

PER CURIAM. We have carefully examined this petition, and are of the opinion that, independently of, and notwithstanding, any criticisms submitted to us by the petition, the substantial questions involved in the case are questions of fact for determination by the jury, and that the same were properly submitted; and we cannot interfere with the result.

The petition for rehearing is denied, and the mandate will issue forthwith.